**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JOHN WILEY & SONS, LTD., AND AMERICAN INSTITUTE OF PHYSICS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| -against- | ) ) | 12 C 1446 |
| MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP, AND JOHN DOE NOS. 1-10, | ) ) ) ) | Hon. Charles R. Norgle |
| Defendants, | ) ) | |
| -and- | ) ) | |
| THE UNITED STATES PATENT AND TRADEMARK OFFICE, | ) ) ) | |
| Intervening Defendant and Counterclaim Plaintiff. | ) ) ) | |

PLAINTIFFS' MOTION TO COMPEL
FURTHER RESPONSES TO INTERROGATORIES
AND PRODUCTION OF DOCUMENTS

Plaintiffs John Wiley & Sons, Ltd., and American Institute of Physics (collectively, the "Publishers") move pursuant to Fed. R. Civ. P. 37(a) to compel defendant McDonnell Boehnen Hulbert & Berghoff LLP ("McDonnell") (i) to fully respond to interrogatories 1 and 2, and (ii) to produce documents in response to document requests 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, and 18.

Preliminary Statement

The Publishers commenced this action asserting that McDonnell infringed their copyrights in scientific articles by making internal copies of those articles in connection with McDonnell's law practice. McDonnell's practice includes both

counseling clients and prosecuting patents before the PTO. The evidence of McDonnell's infringing acts of copying is almost exclusively within McDonnell's control. The Publishers therefore need discovery from McDonnell to establish their case.

In an attempt to limit its liability for making infringing copies, McDonnell has improperly limited its interrogatory responses, and its document search, to McDonnell's patent prosecution practice. It has refused to provide any information concerning copies made in the course of its patent counseling practice. For example, if McDonnell has made an unauthorized copy of a copyrighted article for the purpose of advising a client concerning, for example, whether its product infringes a patent, McDonnell has refused to disclose that fact and refused to produce the relevant documents evidencing that unauthorized copy. Allowing McDonnell to so limit its discovery obligations by mischaracterizing the Publishers' claims may allow McDonnell to determine its own liability for copyright infringement.

<u>Argument</u>

THE COURT SHOULD COMPEL MCDONNELL TO DISCLOSE THE EVIDENCE OF ITS COPYING OF THE COPYRIGHTED ARTICLES THROUGHOUT ITS PRACTICE, NOT SIMPLY IN ITS PATENT PROSECUTION PRACTICE

The most basic inquiry in this action is: how many unauthorized copies did McDonnell make of the two copyrighted articles that are currently the subject of this action, and in what circumstances did McDonnell make them? Because these acts of copying occurred behind closed doors at McDonnell, the answers to these questions are almost exclusively within the control of McDonnell.

A.          The Publishers Have Properly Sought McDonnell's Evidence Of Copying.

To determine the number of unauthorized copies that McDonnell made of the relevant articles, the Publishers served interrogatories and document requests.

The Publishers' Interrogatories 1 and 2 provide:

"1.     For each Copy of the Raznikov Article that McDonnell ever had in its possession, custody or control, Describe in detail the circumstances in which McDonnell made a Copy of that article and/or distributed a Copy of it to any Person outside of McDonnell.

2.     For each Copy of the Erchak Article that McDonnell ever had in its possession, custody or control, Describe in detail the circumstances in which McDonnell made a Copy of that article and/or distributed a Copy of it to any Person outside of McDonnell." (McGarry Dec. Ex. A at 4-5.)

Document requests 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, and 18 concern the extent of McDonnell's copying of the Raznikov and Erchak Articles.

"5.     Documents sufficient to identify the circumstances under which McDonnell obtained its first Copy of the Raznikov Article.

6.     Documents sufficient to identify the circumstances under which McDonnell obtained any subsequent Copy of the Raznikov Article, other than by copying a Copy already within its possession, custody or control.

7.     Documents sufficient to identify each Copy of the Raznikov Article that McDonnell made prior to November 9, 2010.

8.     Documents sufficient to identify each Copy of the Raznikov Article that McDonnell distributed to any Person outside McDonnell prior to November 9, 2010.

9.     Documents sufficient to identify each attorney, patent agent, or other Person affiliated with McDonnell who had possession, custody or control of a Copy of the Raznikov Article at any time prior to November 9, 2010.

10.     Documents sufficient to identify the circumstances under which McDonnell obtained its first Copy of the Erchak Article.

11.     Documents sufficient to identify the circumstances under which McDonnell obtained any subsequent Copy of the Erchak Article, other than by copying a Copy already within its possession, custody or control.

12.     Documents sufficient to identify each Copy of the Erchak Article that McDonnell made prior to November 9, 2010.

13.     Documents sufficient to identify each Copy of the Erchak Article that McDonnell distributed to any Person outside McDonnell prior to November 9, 2010.

14.     Documents sufficient to identify each attorney, patent agent, or other Person affiliated with McDonnell who had possession, custody or control of a Copy of the Erchak Article at any time prior to November 9, 2010. . . .

16.     Documents sufficient to identify each individual who obtained on behalf of McDonnell any licensed Copy of, or a license to copy, the Raznikov Article. . . .

18.     Documents sufficient to identify each individual who obtained on behalf of McDonnell any licensed Copy of, or a license to copy, the Erchak Article." (McGarry Dec. Ex. C at 6-15.)

B.          McDonnell Has Objected To Providing The Responsive Discovery.

In its supplemental responses of September 18, 2012, to the Publishers' interrogatories, McDonnell has objected to disclosing all of the copies of these copyrighted works that McDonnell has made.  McDonnell's objections to interrogatories 1 and 2 each provide:

"MBHB objects to this Interrogatory because the request to 'Describe in detail the circumstances' is undefined, ambiguous, and vague.  MBHB further objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information relating to each Copy of the Raznikov [or Erchak] Article MBHB ever had in its possession, custody, or control without regard to time, and without regard to whether such copying occurred in connection with the allegedly infringing activities.  MBHB further objects to this Interrogatory as seeking information protected by attorney-client privilege and/or work product immunity." (McGarry Dec. Ex. B. at 4-6 (emphasis added).)

McDonnell's objections to document request 5, for example, provide:

4

"MBHB specifically objects to this Request as seeking information protected by attorney client privilege and the work-product doctrine. MBHB further objects to this Request because the term 'circumstances' is vague and ambiguous.

Subject to its general and specific objections, MBHB is aware that it cited the Raznikov Article in conjunction with an information disclosure statement ('IDS') submitted to the United States Patent and Trademark Office ('USPTO') dated October 30, 2008, for U.S. Patent Application Serial No. 10/887,138 ('the '138 Application') and in conjunction with an IDS dated April 7, 2009, for U.S. Patent Application Serial No. 11/396,328 (' the '328 Application'). <u>MBHB will produce responsive, non-privileged documents relating to prosecuting these patent applications</u> to the extent such documents in its possession, custody or control exist and are located after a reasonable search. MBHB objects to this request to the extent it seeks documents beyond those related to its prosecution of the '138 and '328 Applications." (McGarry Dec. Ex. C at 6.)

C.      McDonnell's Objections Are Improper.

McDonnell's objections to the interrogatories and document requests fall within two categories:   (1) objections that are boilerplate, and (2) objections that mischaracterize the Publishers' claims, thereby rendering (in McDonnell's view) the bulk of its information and documents non-responsive.

    1.      The Court Should Overrule McDonnell's Boilerplate Objections.

        a.      Objections To Interrogatories

The term "Describe in detail" is defined in plaintiffs' interrogatories as "to set forth with the level of detail that you would rely upon at the trial of this action." (McGarry Dec. at ¶ 2.)  McDonnell therefore cannot reasonably object that this request is undefined.

The fact that McDonnell made copies of copyrighted articles does not represent either an attorney-client communication or work in anticipation of litigation. McDonnell has no basis for an objection in this respect.

b.    Objections To Document Requests

For each request, McDonnell has objected because of the "attorney client privilege and the work product doctrine." (McGarry Dec. Ex. C.)  This objection has no merit.  The document requests seek evidence that the copyrighted materials have been copied.  The document requests do not seek evidence of either any confidential attorney-client communication or any materials prepared in anticipation of litigation.

McDonnell has objected on the ground that the word "circumstances" is vague and ambiguous. (Id.) This objection has no merit.  McDonnell has not attempted to provide any responsive documents concerning its copying.

McDonnell has objected on the ground that a request for disclosure of evidence of "each" copy is unduly burdensome. (Id.)  However, each copy that McDonnell made (except the two specific copies excluded from the amended complaint) is alleged to be an infringement.  An objection based upon an unreasonable burden will be meritless, unless McDonnell admits that substantial additional unauthorized copying occurred.

2.    The Court Should Overrule McDonnell's Objections
Based Upon McDonnell's Mischaracterization
Of The Scope Of The Publishers' Copyright Claim.

McDonnell has objected to disclosing all information or documents concerning its unauthorized copying of the articles that are the subject of this case by mischaracterizing the Publishers' claim as limited to copies involved in McDonnell's patent prosecution practice.   McDonnell expressly refuses to provide information responsive to the interrogatories unless "such copying occurred in connection with the allegedly infringing activities."  (McGarry Dec. Ex. B. at 4-6 (emphasis added).)  Further,

6

in response to each of the document requests, McDonnell has stated what it objects to the extent it seeks "documents beyond those related to its prosecution of" certain patent applications.  (McGarry Dec. Ex. C (emphasis added).)  In its September 5, 2012 letter to counsel for plaintiffs, counsel for McDonnell stated:  "The amended complaint is a transparent attempt to transform this case from one about using non-patent literature in the course of prosecuting patent applications into one about a litany of other uses of these works, without an factual basis to assert such conduct took place."  (McGarry Dec. Ex. D at 4.)

Whether McDonnell likes it or not, the amended complaint defines the Publishers' claim, and that claim is not limited to unauthorized copies that McDonnell made in the course of its patent prosecution practice.  Rather, the Publishers' claim involves any copy made in McDonnell's law practice.  The amended complaint provides:

> "13.    McDonnell is engaged in the practice of law. On its website, McDonnell states 'we know high-technology industries, and we know the law. We work with our clients to provide them with the benefit of our extensive knowledge and experience, so that they can rest assured that their technology assets are protected.' Among other things, McDonnell holds itself out as practicing 'intellectual property law,' which includes copyright law.
>
> 14.    Upon information and belief, McDonnell has engaged in Unauthorized Copying with respect to copyrighted articles from plaintiffs' journals, including but not limited to the articles identified on Schedule A. [the Publishers] cannot know the full extent of defendants' Unauthorized Copying without discovery." (Dkt. No. 34 at ¶¶ 13-14.)

McDonnell's other activities, about which McDonnell refuses to provide any information whatsoever concerning its unauthorized copying, include counseling clients with respect to a broad variety of patent matters.  McDonnell's website provides:

> "Our attorneys provide patent prosecution and counseling services in a wide range of technical areas, including biotechnology, business methods,

chemical, computing, electrical, mechanical and materials, pharmaceuticals and diagnostics, and telecommunications. Our broad patent litigation experience in enforcement and defense gives us an advantage in prosecution situations. We understand all sides of the issues that our clients face, so we are always ready to aggressively pursue and defend their rights.

At MBHB, our attorneys have unparalleled prosecution experience and technical knowledge." (http://www.mbhb.com/prosecution/ (Last checked October 15, 2012)(emphasis added).)

These counseling services would include (i) evaluating potential inventions that clients present, only to determine that they are not patentable, (ii) advising clients how to lawfully avoid infringement by designing around existing patents, (iii) assessing the validity of patents, for the purpose of allowing their clients to practice the subject matter of invalid patents, (iv) giving opinions as to whether an existing product infringes a patent, and (v) determining whether the client's interests would be best served by maintaining otherwise patentable subject matter as a trade secret. These counseling services would not involve filing or prosecuting patent applications.

Accordingly, a decision allowing McDonnell to withhold evidence of copying unless it "occurred in connection with the allegedly infringing activities" (McGarry Dec. Ex. B at 4-6) would allow McDonnell to selectively withhold evidence that in itself creates prima facie evidence of copyright infringement. Such a decision may allow McDonnell to determine its own liability for copyright infringement.

<u>Conclusion</u>

For the reasons set forth above, the Publishers respectfully request that the Court compel McDonnell to fully answer Interrogatories 1 and 2, and to produce documents responsive to document requests numbered 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, and 18.

Dated:  October 17, 2012               Respectfully submitted,

/s/ Annette M. McGarry
Annette M. McGarry (#6205751)
amm@mcgarryllc.com
Marianne C. Holzhall (#6204057)
mch@mcgarryllc.com
McGarry & McGarry, LLC
120 North LaSalle Street, Suite 1100
Chicago, IL 60602
(312) 345-4600

/s/ William Dunnegan
William Dunnegan (*Pro Hac Vice*)
Laura Scileppi (*Pro Hac Vice*)
Dunnegan & Scileppi LLC
350 Fifth Avenue
New York, New York 10118
(212) 332-8300